JUDGE CEDARBAUM

13 CV 0224

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------X

FELIX RIVERA-PITRE, )

Plaintiff, )

-against- )

THE CITY OF NEW YORK, and NYPD )
DEPUTY INSPECTOR JOHNNY CARDONA,

)

Defendants. )
-------------------------------------------------------X

Civil Action No.

**RECEIVED** JAN 1 0 2013

**VERIFIED COMPLAINT**

**JURY TRIAL DEMANDED**

ECF Case

Plaintiff FELIX RIVERA-PITRE, by his attorneys, the Law Office of Ronald L. Kuby,

hereby brings this action under 42 U.S.C. § 1983 to redress his civil and legal rights, and alleges

as follows:

## PRELIMINARY STATEMENT

1.     This is a civil rights action in which the plaintiff, FELIX RIVERA-PITRE, seeks

relief for the defendants' violations of his rights secured by the Civil Rights Act of 1871, 42

U.S.C. § 1983, by the United States Constitution, including its First, Fourth and Fourteenth

Amendments, and by the laws and Constitution of the State of New York.  Plaintiff seeks

compensatory and punitive damages, an award of costs, interest and attorney's fees, and such

other and further relief as this Court deems just and proper.

## JURISDICTION AND VENUE

2.     This action is brought pursuant to 42 U.S.C. §§ 1983 and 1988, and the First,

Fourth and Fourteenth Amendments to the United States Constitution.  Jurisdiction is conferred

upon this Court by 28 U.S.C. §§ 1331 and 1343, this being an action seeking redress for the

violation of the Plaintiff's constitutional and civil rights.

3.      Plaintiff further invokes this Court's supplemental jurisdiction, pursuant to 28 U.S.C. § 1367, over any and all state law claims and as against all parties that are so related to claims in this action within the original jurisdiction of this court that they form part of the same case or controversy.

4.      Venue in this District is proper under 28 U.S.C. § 1391(b) and (c) in that Defendant CITY OF NEW YORK is administratively located within the Southern District of New York, and the events giving rise to this claim occurred within the boundaries of the Southern District of New York.

## JURY TRIAL DEMANDED

5.      Plaintiff demands a trial by jury on each and every one of his claims as pleaded herein.

## PARTIES

6.      At all times relevant to this action, Plaintiff FELIX RIVERA-PITRE was a resident of Queens County, New York.  He is currently a resident of Kings County, New York.

7.      Defendant CITY OF NEW YORK is and was at all times relevant herein a municipal entity created and authorized under the laws of the State of New York.  It is authorized by law to maintain a police department which acts as its agent in the area of law enforcement and for which it is ultimately responsible.  Defendant CITY OF NEW YORK assumes the risks incidental to the maintenance of a police force and the employment of police officers.  Defendant

CITY OF NEW YORK was at all times relevant herein the public employer of Defendant Deputy Inspector JOHNNY CARDONA.

8.      Defendant JOHNNY CARDONA is and was at all times relevant herein a duly appointed and acting officer, servant, employee and agent of the New York City Police Department, a municipal agency of Defendant CITY OF NEW YORK.  At all times relevant herein, Defendant CARDONA was acting under color of the laws, statutes, ordinances, regulations, policies, customs and/or usages of the State of New York and the New York City Police Department, in the course and scope of his duties and functions as an officer, agent, servant, and employee of Defendant CITY OF NEW YORK, was acting for, and on behalf of, and with the power and authority vested in him by the CITY OF NEW YORK and the New York City Police Department, and was otherwise performing and engaging in conduct incidental to the performance of his lawful functions in the course of his duties.  He is sued individually and in his official capacity.

9.      By the conduct, acts, and omissions complained of herein, Defendant JOHNNY CARDONA violated clearly established constitutional standards under the First, Fourth, and Fourteenth Amendments to the United States Constitution of which a reasonable police officer under the circumstances would have known.

## NOTICE OF CLAIM

10.      Plaintiff timely filed a Notice of Claim with the Comptroller of the City of New York, setting forth the facts underlying Plaintiff's claim against DEPUTY INSPECTOR JOHNNY CARDONA and Defendant CITY OF NEW YORK.

11.      The City assigned a claim number to Plaintiff's claim, and Plaintiff was subjected to

an examination pursuant to N.Y. Gen. Mun. L. Sec. 50-h on August 28, 2012.

12.     To date, no answer has been received by Plaintiff and no compensation has been offered by Defendant CITY OF NEW YORK in response to this claim.

13.     This action has been commenced within one year and ninety days of the date of occurrence of the events giving rise to this Complaint.

## STATEMENT OF FACTS

14.     On the morning of October 14, 2011, Felix Rivera-Pitre became one of the victims of police brutality, and one of the faces of the Occupy Wall Street movement, when NYPD Deputy Inspector Johnny Cardona, without warning or provocation, sucker-punched the 37 year-old, HIV positive protester while he marched peacefully down Williams Street as part of an Occupy Wall Street demonstration.

15.     The attack was captured on video and in photographs taken by individuals present at the scene.  Many of those videos were posted on social media websites, accessible to the public within hours of the assault.  A disc of exhibits containing such footage is enclosed herewith, and provides both real-time and slow motion videos of the attack and the moments leading up to it.

16.     Amateur videos documenting false arrests, the unprovoked sucker-punch, and other violent attacks against innocent protesters engaged in otherwise peaceful demonstrations quickly went viral, with over a million views.  Capturing the attention of major media outlets and viewers around the world, those videos helped galvanize the now-global Occupy Wall Street movement, which began in New York City and was in its infancy in October, 2011.

17.    On the morning of October 14, 2011, Felix Rivera-Pitre and other demonstrators associated with the Occupy Wall Street movement assembled in Zucotti Park and marched through the Financial District in protest of social and economic injustice, and in celebration of news that they would not be evicted from the park.

18.    Upon information and belief, scores of NYPD police officers were deployed to the area. A police detail of nearly a dozen officers on scooters and countless more on foot followed the herd of protesters. During the march, Mr. Rivera-Pitre observed scooters recklessly advancing through the crowd, hitting some of the protesters, endangering others, and even running over one person.

19.    At some point, Felix Rivera-Pitre found himself near the back of the crowd, only feet away from a group of officers on scooters, and became frightened. He began marching faster, trying to avoid the scooters and find a position of safety within the crowd.

20.    Mr. Rivera-Pitre continued walking down Williams Street, peacefully engaging in First Amendment activity, when Deputy Inspector JOHNNY CARDONA approached him from behind, grabbed his arm, and shouted, "Get onto the sidewalk."

21.    One to two seconds later, without provocation or justification, CARDONA forcefully grabbed Mr. Rivera-Pitre, again, by the back of his right shoulder.

22.    As Mr. Rivera-Pitre turned toward D.I. CARDONA, CARDONA swung his right arm and punched Mr. Rivera-Pitre in the face, hitting him in the ear and the jaw with a tightly clenched fist.

23.     The assault is clearly depicted on the video labeled Exhibit A on the enclosed disc of exhibits.  The photographs attached hereto as Exhibits B through D show the sequence of the punch in three still images.

24.     The force of the blow knocked Mr. Rivera-Pitre to the ground and ripped the earring from his ear, tearing his left earlobe and creating a pool of blood.

25.     Upon information and belief, Deputy Inspector CARDONA continued to strike and/or kick Mr. Rivera-Pitre as he lay semiconscious on the asphalt.  Exhibit E on the enclosed disc is a video taken from a different angle, which shows Deputy Inspector CARDONA savagely kick something on the street seconds after Felix Rivera-Pitre collapsed to the ground; his target cannot be seen in the video, but the fearful cries of onlookers, as heard on the video, are telling.

26.     Members of the crowd rushed to the aid of Mr. Rivera-Pitre and lifted him off of the ground by his arms.  With his legs in the hands of one or more police officers, Felix Rivera-Pitre was suspended in the air like a rag doll, being pulled in different directions, until the protesters won the tug-of-war and carried him to safety on an adjacent sidewalk.

27.     During the attack, Mr. Rivera-Pitre's earlobe was partially torn, he sustained lacerations and bruises to his arms, and he was caused to endure significant pain to his face, arms, shoulder, legs which lasted for several days after the beating.

28.     Upon information and belief, Deputy Inspector CARDONA failed to request medical attention for Mr. Rivera-Pitre, and did not, in any way, seek to assist the incapacitated victim of his assault.

29.     Eventually, a civilian examined Mr. Rivera-Pitre at the scene, and opined that Mr. Rivera-Pitre had not suffered a concussion.

30.     At some point after the incident, Mr. Rivera-Pitre was examined by a physician during a regularly-scheduled doctor appointment.  Observing the injuries sustained during the October 14 attack, the doctor prescribed muscle relaxers and anti-inflammatories as treatment for the pain and inflammation to Mr. Rivera-Pitre's jaw.

31.     Mr. Rivera-Pitre continued to experience pain and discomfort in his face, extending from his jaw up and into his ear, for approximately six weeks after the assault.

32.     Upon information and belief, after videos of the assault were uploaded to the Internet, Deputy Inspector CARDONA accused Mr. Rivera-Pitre of attempting to elbow him in the face.

33.     CARDONA's allegations, however, are belied by additional video evidence that surfaced in the days following the assault.  The video enclosed as Exhibit F shows the moments leading up to the attack; the relevant footage of CARDONA begins at the 1:30 mark.  As can be seen on the video, CARDONA's actions were unprovoked.  The video shows Deputy Inspector CARDONA grab the arm of a man who is walking down the street, behaving peacefully.  Exhibit G shows the moments leading up to the attack in slow motion, presenting clear confirmation of the absence of any provocation for the patently premeditated assault.

34.     As a result of CARDONA's retaliatory false allegations, the NYPD opened a felony complaint (referred to by members of the NYPD as an "open 61") against Mr. Rivera-Pitre, authorizing his immediate arrest.

35.     For more than two weeks, Felix Rivera-Pitre lived in fear of being arrested for a crime he did not commit.

36.     On October 31, 2011, the NYPD agreed to suspend any further action against Mr. Rivera-Pitre pending the conclusion of an investigation launched by the District Attorney's Office into the conduct of D.I. CARDONA.

37.     To date, no discipline has been imposed on CARDONA in connection with the above-described assault.  Commenced more than a year ago, the District Attorney's investigation is still "ongoing."

38.     At no time during the course of the incident did Mr. Rivera-Pitre pose a threat to the safety of Defendant CARDONA or the public.  Mr. Rivera-Pitre was not engaging in any criminal activity, he was not arrested, nor was he charged with a crime in connection with the events of October 14, 2011.

39.     The conduct of Defendant CARDONA, in using force against Mr. Rivera-Pitre, was totally without probable cause, was excessive, and was done maliciously, falsely and in bad faith.

40.     As a result of the events alleged herein, Mr. Rivera-Pitre was discouraged from participating in the Occupy Wall Street movement, and his involvement in OWS activities decreased after the attack.

41.     As a result of the events alleged herein, and due directly to the actions taken by Deputy Inspector CARDONA, Felix Rivera-Pitre suffered and continues to suffer physical pain, emotional trauma, discomfort, humiliation, fear, anxiety and embarrassment, among other things.

8

## CAUSES OF ACTION

### FIRST CLAIM:  EXCESSIVE FORCE

### DEPRIVATION OF RIGHTS UNDER THE FOURTH AND FOURTEENTH AMENDMENTS AND 42 U.S.C. §1983

42.      Plaintiff re-alleges and incorporates by reference the allegations set forth in each preceding paragraph as if fully set forth herein.

43.      The conduct and actions of Defendant JOHNNY CARDONA, acting under color of law, in punching and otherwise striking, kicking and/or beating Felix Rivera-Pitre, was excessive and unreasonable, was done intentionally, willfully, maliciously, with a deliberate indifference and/or with a reckless disregard for the natural and probable consequences of his acts, was done without lawful justification or reason, and was designed to and did cause specific and serious physical and emotional pain and suffering in violation of Plaintiff's rights as guaranteed under 42 U.S.C. §1983, and the Fourth and Fourteenth Amendments to the United States Constitution, including the right to be free from an unreasonable seizure of his person and the right to be free from the use of excessive, unreasonable, and unjustified force.

44.      As a direct and proximate result of the foregoing, Plaintiff was subjected to great physical and emotional pain and humiliation, was deprived of his liberty, and was otherwise damaged and injured.

### SECOND CLAIM:  DEPRIVATION OF FREE SPEECH AND EXPRESSION

### DEPRIVATION OF RIGHTS UNDER THE FIRST AND FOURTEENTH AMENDMENTS AND 42 U.S.C. §1983

45.      Plaintiff re-alleges and incorporates by reference the allegations set forth in each preceding paragraph as if fully set forth herein.

46.     The above described conduct and actions of Defendant CARDONA, acting under color of law, deprived Plaintiff of his rights to free expression and association, was done due to Defendant's personal animus and bias against the content of Plaintiff's speech, and in retaliation against Plaintiff's exercise of his constitutionally protected speech; was done to interfere with, and chill, the exercise of free speech and association, and was done intentionally, maliciously, with a deliberate indifference and/or with a reckless disregard for the natural and probable consequences of his acts, was done without lawful justification or reason, and was designed to and did cause specific and serious pain and suffering in violation of Plaintiff's constitutional rights as guaranteed under 42 U.S.C. §1983, and the First and Fourteenth Amendments to the United States Constitution.

47.     As a result of the foregoing, Plaintiff suffered the injuries and damages set forth above.

## THIRD CLAIM:  MUNICIPAL LIABILITY FOR CONSTITUTIONAL VIOLATIONS
### MONELL CLAIM AGAINST THE CITY OF NEW YORK - 42 U.S.C. §1983

48.     Plaintiff re-alleges and incorporates by reference the allegations set forth in each preceding paragraph as if fully set forth herein.

49.     The CITY OF NEW YORK directly caused the constitutional violations suffered by Plaintiff, and is liable for the damages suffered by Plaintiff as a result of the conduct of Defendant CARDONA.  The conduct of Defendant CARDONA was a direct consequence of policies and practices of Defendant CITY OF NEW YORK.

50.     At all times relevant to this complaint Defendant CITY OF NEW YORK, acting through the NYPD, had in effect policies, practices, and customs that condoned and fostered the unconstitutional conduct of Defendant CARDONA, and were a direct and proximate cause of the

damages and injuries complained of herein.

51.     The October 14, 2011 march from Zuccotti Park was part of the Occupy Wall Street movement.  The events of October 14, 2011 are among numerous OWS demonstrations in which activists marching in support of the movement became victims of police brutality.

52.     At all times relevant to this complaint, Defendant CITY OF NEW YORK, acting through its police department, and through Defendant CARDONA, had policies, practices, customs, and usages of encouraging and/or tacitly sanctioning the violation of and/or retaliation for individuals' exercise of free expression and assembly.  Upon information and belief, Defendant CITY OF NEW YORK planned and implemented a policy, practice, custom and usage of controlling the OWS protests, that was designed to and did preempt lawful activities by illegally detaining persons engaged in protected First Amendment activity, using excessive force against persons engaged in protected First Amendment activity, retaliating against witnesses to police misconduct, and discouraging police officers from reporting the misconduct of other officers.  In connection with the OWS demonstrations, The CITY OF NEW YORK consciously disregarded the illegality and unconstitutionality of said detentions, use of force, and retaliation in order to punish and suppress peaceful expression and association with the OWS movement.  These policies, practices, customs, and usages were a direct and proximate cause of the unconstitutional conduct alleged herein.

53.     The existence of these unconstitutional customs and policies, specifically as it relates to the Occupy Wall Street movement, is evidenced by the countless repeated occurrences of similar wrongful conduct documented at OWS demonstrations in the City over the past year.[1]

---

1 By December 31, 2011 – just over three months from the inception of the Occupy movement – the Civilian Complaint Review Board had received 37 complaints, involving 41 police officers

54.     The CITY OF NEW YORK knew or should have known of its police officers' propensity to engage in misconduct of the type alleged herein. Upon information and belief, prior to October 14, 2011, the CITY OF NEW YORK was aware of several complaints of police misconduct involving the use of unnecessary and excessive force against Occupy Wall Street protesters by members of the NYPD. Despite its knowledge of such incidents of prior misconduct, the CITY OF NEW YORK failed to take remedial action.

55.     It was the policy and/or custom of the CITY OF NEW YORK to inadequately and improperly investigate citizen complaints of police misconduct, and acts of misconduct were instead tolerated by the CITY OF NEW YORK. For example, upon information and belief, between 2002 and 2010, the Civilian Complaint Review Board "recommended that 2,078 officers receive the most severe penalty, but that punishment was only handed down to 151 officers."[2]

56.     It was the policy and/or custom of the CITY OF NEW YORK to inadequately train, supervise and discipline its police officers, including Defendant CARDONA, thereby failing to adequately discourage further constitutional violations on the part of its police officers. The City did not require appropriate in-service training or re-training of officers who were known to have engaged in police misconduct.

57.     As a result of the above described policies and customs, police officers of the CITY

---

and 78 alleged victims, related to incidents that occurred at OWS demonstrations within the CCRB's jurisdiction. In addition, the CCRB received approximately 850 messages from concerned citizens who had seen videos of the police brutality on the internet or television. New York City CCRB Status Report, January – December 2011, at pg. 4.

[2] Cristopher Robbins, *New CCRB Gets Funding To Crack Down On Police Misconduct*, Gothamist, May 15, 2012, *available at* http://gothamist.com/2012/05/15/new_ccrb_recieves_funding_to_keep_p.php.

OF NEW YORK, including Defendant CARDONA, believed that their actions would not be properly monitored by supervisory officers and that misconduct would not be investigated or sanctioned, but would be tolerated.

58.     The wrongful policies, practices, customs and/or usages complained of herein, demonstrated a deliberate indifference on the part of policymakers of the CITY OF NEW YORK to the constitutional rights of persons within the city, and were the direct and proximate cause of the violations of Plaintiff's rights alleged herein.

## FOURTH CLAIM:  ASSAULT AND BATTERY

## COMMON LAW CLAIM

59.     Plaintiff re-alleges and incorporates by reference the allegations set forth in each preceding paragraph as if fully set forth herein.

60.     By the conduct and actions described above, Defendant JOHNNY CARDONA inflicted the torts of assault and battery upon Plaintiff.  The acts and conduct of Defendant CARDONA were the direct and proximate cause of injury and damage to Plaintiff and violated Plaintiff's statutory and common law rights as guaranteed by the laws and Constitution of the State of New York.

61.     Defendant CARDONA's acts constituted an assault upon Plaintiff in that CARDONA intentionally attempted to injure Plaintiff or commit a battery upon him, and further that CARDONA's acts represented a grievous affront to Plaintiff.

62.     Defendant CARDONA's acts constituted a battery upon Plaintiff in that the above described bodily contact was intentional, unauthorized, and grossly offensive in nature.

63.     The actions of Defendant CARDONA were intentional, reckless, and unwarranted, and without any just cause or provocation, and Defendant CARDONA knew, or should have known, that his actions were without the consent of Plaintiff.

64.     The injuries sustained by Plaintiff were caused wholly and solely by reason of the conduct described, and Plaintiff did not contribute thereto.

65.     As a direct and proximate result of the foregoing, Plaintiff was subjected to great physical and emotional pain and humiliation, was deprived of his liberty, and was otherwise damaged and injured.

## FIFTH CLAIM:  INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
## COMMON LAW CLAIM

66.     Plaintiff re-alleges and incorporates by reference the allegations set forth in each preceding paragraph as if fully set forth herein.

67.     Defendant CARDONA's conduct, in punching, striking, beating, and otherwise assaulting Plaintiff, without provocation or justification, was extreme, outrageous, and utterly intolerable in a civilized community; conduct which exceeded all reasonable bounds of decency.

68.     Defendant CARDONA's conduct, described above, was intended to and did cause severe emotional distress to Plaintiff.

69.     The conduct of Defendant CARDONA was the direct and proximate cause of injury and damage to Plaintiff and violated his statutory and common law rights as guaranteed by the laws and Constitution of the State of New York.

70.     As a result of the foregoing, Plaintiff was deprived of his liberty, was subjected to

14

serious physical and emotional pain and suffering, and was otherwise damaged and injured.

## SIXTH CLAIM: NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

### COMMON LAW CLAIM

71.     Plaintiff re-alleges and incorporates by reference the allegations set forth in each preceding paragraph as if fully set forth herein.

72.     Defendant CARDONA's conduct, in assaulting and battering Plaintiff, was careless and negligent as to the emotional health of Plaintiff, and caused severe emotional distress to Plaintiff.

73.     The acts and conduct of Defendant CARDONA were the direct and proximate cause of injury and damage to Plaintiff and violated his statutory and common law rights as guaranteed by the laws and Constitution of the State of New York.

74.     As a result of the foregoing, Plaintiff was deprived of his liberty, was subjected to serious physical and emotional pain and suffering, and was otherwise damaged and injured.

### SEVENTH CLAIM: NEGLIGENCE

### COMMON LAW CLAIM

75.     Plaintiff re-alleges and incorporates by reference the allegations set forth in each preceding paragraph as if fully set forth herein.

76.     Defendant CARDONA, while acting as agent and employee for Defendant CITY OF NEW YORK, in his capacity as a deputy inspector for the CITY OF NEW YORK, owed a duty to Plaintiff to perform his police duties without the use of excessive force. Defendant CARDONA's use of force upon Plaintiff, when Plaintiff was unarmed and did not pose a threat of death or grievous bodily injury to Defendant CARDONA or to others constitutes negligence for which Defendant

15

CARDONA is individually liable.

77.     Defendant CARDONA's use of force upon Plaintiff when Defendant CARDONA had no lawful authority to arrest Plaintiff or to use force against Plaintiff constitutes negligence for which Defendant CARDONA is individually liable.

78.     As a proximate result of Defendant CARDONA's negligent use of excessive force, Plaintiff sustained physical and emotional pain and suffering, and was otherwise damaged and injured.

## EIGHTH CLAIM:  RESPONDEAT SUPERIOR LIABILITY OF THE CITY OF NEW YORK FOR STATE LAW VIOLATIONS

### COMMON LAW CLAIM

79.     Plaintiff re-alleges and incorporates by reference the allegations set forth in each preceding paragraph as if fully set forth herein.

80.     The conduct of Defendant CARDONA alleged herein occurred while he was on duty and in uniform, in and during the course and scope of his duties and functions as a New York City police officer, and while he was acting as an agent, officer, servant and employee of Defendant CITY OF NEW YORK.  As a result, Defendant CITY OF NEW YORK is liable to Plaintiff pursuant to the state common law doctrine of respondeat superior.

## NINTH CLAIM:  NEGLIGENT SUPERVISION, RETENTION AND TRAINING

### COMMON LAW CLAIM

81.     Plaintiff re-alleges and incorporates by reference the allegations set forth in each preceding paragraph as if fully set forth herein.

82.     Defendant CITY OF NEW YORK negligently trained, retained, and supervised

16

Defendant CARDONA.  The acts and conduct of Defendant CARDONA were the direct and proximate cause of injury and damage to Plaintiff and violated his statutory and common law rights as guaranteed by the laws and Constitution of the State of New York.

83.     As a result of the foregoing, Plaintiff was deprived of his liberty, was subjected to great physical and emotional pain and suffering, and was otherwise damaged and injured.

**WHEREFORE,** Plaintiff demands the following relief jointly and severally against all of the defendants:

a.     Compensatory damages in the amount to be determined by a jury;

b.     Punitive damages in an amount to be determined by a jury;

c.     The convening and empanelling of a jury to consider the merits of the claims herein;

d.     Costs and interest and attorney's fees;

e.     Such other and further relief as this Court may deem just and proper.

Dated: New York, New York
       January 9, 2013

LEA SPIESS, Esq. [LS-7866]
RONALD L. KUBY, Esq. [RK-1879]
Law Office of Ronald L. Kuby
119 West 23rd Street, Suite 900
New York, New York  10011
Email:  LSpiess@kubylaw.com
(212) 529-0223 (t)
(212) 529-0644 (f)

*Attorneys for Plaintiff*

17

## **VERIFICATION**

State of New York          )
                           )          ss.:
County of New York         )

FELIX RIVERA-PITRE, being duly sworn, deposes and says as follows:

I have read the foregoing Complaint and know the contents thereof; the same is

true to my own knowledge except those parts marked "upon information and

belief," and as to those I believe them to be true.

Dated:          January 9, 2013

_____
FELIX RIVERA-PITRE

SWORN TO AND SUBSCRIBED BEFORE ME
THIS THE _9th_ DAY OF JANUARY, 2013.

_____
NOTARY PUBLIC

LEA SPIESS
Notary Public, State of New York
No. 02SP6211289
Qualified in New York County
Commission Expires September 14, 2013

# Exhibit B



# Exhibit C



# Exhibit D

